JUDGE CROTTY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

PRIORITY RECORDS LLC, a California limited liability company; ARISTA RECORDS LLC, a Delaware limited liability company; ATLANTIC RECORDING CORPORATION, a Delaware corporation; BMG MUSIC, a New York general partnership; CAPITOL RECORDS, INC., a Delaware corporation; CAROLINE RECORDS, INC., a New York corporation; ELEKTRA ENTERTAINMENT GROUP INC., a Delaware corporation; FONOVISA, INC., a California corporation; INTERSCOPE RECORDS, a California general partnership; LAFACE RECORDS LLC, a Delaware limited liability company; LAVA RECORDS LLC, a Delaware limited liability company; LOUD RECORDS LLC, a Delaware corporation; MOTOWN RECORD COMPANY, L.P., a California limited partnership; SONY BMG MUSIC ENTERTAINMENT, a Delaware general partnership; UMG RECORDINGS, INC., a Delaware corporation; VIRGIN RECORDS AMERICA, INC., a California corporation; WARNER BROS. RECORDS INC., a Delaware corporation; and ZOMBA RECORDING LLC, a Delaware limited liability company,

    Plaintiffs,

  -against-

DOES 1 - 40,

    Defendants.

Civil Action No.: 07 CIV 8418

---

**MEMORANDUM OF LAW IN SUPPORT OF *EX PARTE* APPLICATION FOR LEAVE TO TAKE IMMEDIATE DISCOVERY**

**I. INTRODUCTION**

  Plaintiffs, record companies who own the copyrights in the most popular sound recordings in the United States, seek leave of the Court to serve limited, immediate discovery on a third party Internet Service Provider ("ISP") to determine the true identities of Doe Defendants, who are being sued for direct copyright infringement. Without such discovery, Plaintiffs cannot

identify the Doe Defendants, and thus cannot pursue their lawsuit to protect their copyrighted works from repetitive, rampant infringement.[1]

As alleged in the complaint, the Doe Defendants, without authorization, used an online media distribution system (*e.g.*, a peer-to-peer or "P2P" system) to download Plaintiffs' copyrighted works and/or distribute copyrighted works to the public. See Declaration of Carlos Linares ("Linares Decl."), ¶ 18 (attached hereto as Exhibit A). Although Plaintiffs do not know the true names of the Doe Defendants,[2] Plaintiffs have identified each Defendant by a unique Internet Protocol ("IP") address assigned to that Defendant on the date and at the time of that Defendant's infringing activity. Id. Additionally, Plaintiffs have gathered evidence of the infringing activities. Id. ¶¶ 14-15, 19. Plaintiffs have downloaded a sample of several of the sound recordings each Defendant illegally distributed and have evidence of every file (at times numbering in the thousands) that each Defendant illegally distributed to the public. Id.

Plaintiffs have identified the ISP that provided Internet access to each Defendant by using a publicly available database to trace the IP address for each Defendant. Id. ¶¶ 12, 18. Here, the ISP is Time Warner Cable ("Time Warner"). Id. When given a Defendant's IP address and the date and time of infringement, an ISP quickly and easily can identify the name and address of the Doe Defendant (*i.e.*, the ISP's subscriber) because that information is contained in

---

[1] Because Plaintiffs do not currently know the identity of any of the Defendants, Plaintiffs cannot ascertain any of the Defendants' positions on this *Ex Parte* Application.

[2] When using a P2P system (*e.g.*, Ares, eDonkey, Gnutella, BitTorrent, or DirectConnect), Defendants typically use monikers, or user names, and not their true names. Linares Decl., ¶ 10. Plaintiffs have no ability to determine a Defendant's true name other than by seeking the information from the ISP. Id. ¶¶ 10, 16.

the ISP's subscriber activity log files. Id. ¶ 16.[3] Plaintiffs' experience is that ISPs typically keep log files of subscriber activities for only limited periods of time – which can range from as short as a few days, to a few months – before erasing the data. Id. ¶ 24. Plaintiffs alert the ISP to the existence of the copyright claims shortly after identifying the infringing activity and ask the ISP to maintain the log files.

       Plaintiffs now seek leave of the Court to serve limited, immediate discovery on Time Warner to identify each Defendant. Plaintiffs intend to serve a Rule 45 subpoena on Time Warner seeking documents that identify each Defendant's true name, current (and permanent) addresses and telephone numbers, e-mail addresses, and Media Access Control ("MAC") addresses. Once Plaintiffs learn a Defendant's identifying information, Plaintiffs will attempt to contact that Defendant and attempt to resolve the dispute. If the dispute is not resolved and it is determined that it would be more appropriate to litigate the copyright infringement claims in another jurisdiction, Plaintiffs will dismiss that Defendant from the present lawsuit and re-file in the appropriate jurisdiction. Without the ability to obtain the Doe Defendants' identifying information, however, Plaintiffs may never be able to pursue their lawsuit to protect their copyrighted works from repeated infringement. Id. ¶ 24. Moreover, the infringement may be ongoing such that immediate relief is necessary. Thus, the need for the limited, immediate discovery sought in this *Ex Parte* Application is critical.

---

[3] ISPs own or are assigned certain blocks or ranges of IP addresses. A subscriber gains access to the Internet through an ISP after setting up an account with the ISP. An ISP then assigns a particular IP address in its block or range to the subscriber when that subscriber goes "online." After reviewing the subscriber activity logs (which contain the assigned IP addresses), an ISP can identify its subscribers by name. Linares Decl., ¶ 16.

3

## II.     BACKGROUND

The Internet and P2P networks have spawned an illegal trade in copyrighted works. See MGM Studios Inc. v. Grokster, Ltd., 545 U.S. 913, 923 (U.S. 2005). By downloading P2P software, and logging onto a P2P network, an individual can upload (distribute) or download (copy), without authorization, countless copyrighted music and video files to or from any other P2P network user worldwide. See id. at 920 (detailing the process used by infringers to download copyrighted works); A&M Records, Inc. v. Napster, Inc., 239 F.3d 1004, 1014 (9th Cir. 2001) (stating that infringers use P2P networks to copy and distribute copyrighted works); Universal City Studios, Inc. v. Reimerdes, 111 F. Supp. 2d 294, 331 (S.D.N.Y.), aff'd sub nom., Universal City Studios, Inc. v. Corley, 273 F.3d 429 (2d Cir. 2001) (describing a viral system, in which the number of infringing copies made available multiplies rapidly as each user copying a file also becomes a distributor of that file). Until enjoined, Napster was the most notorious online media distribution system. Grokster, 545 U.S. at 924. Notwithstanding the Napster Court's decision, similar online media distribution systems emerged that have attempted to capitalize on the growing illegal market that Napster fostered. These include Ares, KaZaA, eDonkey, BitTorrent, DirectConnect, and Gnutella, among others. Linares Decl., ¶ 6. Despite the continued availability of such systems, there is no dispute that the uploading and downloading of copyrighted works without authorization is copyright infringement. Napster, 239 F.3d at 1014-15; In re Aimster Copyright Litig., 334 F.3d 643 (7th Cir. 2003), cert. denied, 124 S. Ct. 1069 (2004). Nonetheless, at any given moment, millions of people illegally use online media distribution systems to upload or download copyrighted material. Linares Decl., ¶ 6. More than 2.6 *billion* infringing music files are downloaded monthly. L. Grossman, *It's All Free*, Time, May 5, 2003, at 60-69.

The propagation of illegal digital copies over the Internet significantly harms copyright owners, and has had a particularly devastating impact on the music industry. Linares Decl., ¶ 9. The RIAA member companies lose significant revenues on an annual basis due to the millions of unauthorized downloads and uploads of well-known recordings that are distributed on P2P networks. Id. ¶ 9. Evidence shows that the main reason for the precipitous drop in revenues is that individuals are downloading music illegally for free, rather than buying it. See In re Aimster Copyright Litig., 334 F.3d at 645.

### III.   ARGUMENT

Courts, including this circuit, routinely allow discovery to identify "Doe" defendants. See Valentin v. Dinkins, 121 F.3d 72, 75-76 (2d Cir. 1997) (vacating dismissal; *pro se* plaintiff should have been permitted to conduct discovery to reveal identity of the defendant); Wakefield v. Thompson, 177 F.3d 1160, 1163 (9th Cir. 1999) (error to dismiss unnamed defendants given possibility that identity could be ascertained through discovery); Dean v. Barber, 951 F.2d 1210, 1215 (11th Cir. 1992) (error to deny the plaintiff's motion to join John Doe defendant where identity of John Doe could have been determined through discovery); Munz v. Parr, 758 F.2d 1254, 1257 (8th Cir. 1985) (error to dismiss claim merely because the defendant was unnamed; "Rather than dismissing the claim, the court should have ordered disclosure of the Officer Doe's identity"); Maclin v. Paulson, 627 F.2d 83, 87 (7th Cir. 1980) (where "party is ignorant of defendants' true identity . . . plaintiff should have been permitted to obtain their identity through limited discovery").

Indeed, in similar copyright infringement cases brought by Plaintiffs, and/or other record companies, against Doe defendants for infringing copyrights over P2P networks, many courts, including this Court, have granted Plaintiffs' motions for leave to take expedited

discovery. See, e.g., Order, Elektra Ent't v. Does 1-3, No. 05-cv-6693 (W.D.N.Y. Dec. 8, 2005); Order, Elektra v. John Doe, No. 04-cv-4230 (E.D.N.Y. Jan. 31, 2005); Order, Sony BMG Music Ent't v. Does 1-2, No. 04-cv-1253 (NAM/GHL) (N.D.N.Y. Nov. 5, 2004); Order, Virgin Records Am., Inc. v. Does 1-3, Civil Action No. 04-cv-701 (JCH) (D. Conn. Apr. 29, 2004); Order, Capitol Records, Inc. v. Does 1-250, No. 04-cv-472 (LAK) (S.D.N.Y. Jan. 26, 2004) (true and correct copies of these Orders are attached hereto as Exhibit B). This Court should not depart from its well-reasoned decisions, or the well-reasoned decisions of other courts that have addressed this issue directly.

Courts allow parties to conduct expedited discovery in advance of a Rule 26(f) conference where the party establishes "good cause" for such discovery. See UMG Recordings, Inc., 2006 U.S. DIST. LEXIS 32821 (N.D. Cal. Mar. 6, 2000); Qwest Comm. Int'l, Inc. v. WorldQuest Networks, Inc., 213 F.R.D. 418, 419 (D. Colo. 2003); Entertainment Tech. Corp. v. Walt Disney Imagineering, No. Civ. A. 03-3546, 2003 WL 22519440, at *4 (E.D. Pa. Oct. 2, 2003) (applying a reasonableness standard); Semitool, Inc. v. Tokyo Electron Am., Inc., 208 F.R.D. 273, 275-76 (N.D. Cal. 2002); Yokohama Tire Corp. v. Dealers Tire Supply, Inc., 202 F.R.D. 612, 613-14 (D. Ariz. 2001) (applying a good cause standard). Plaintiffs easily have met this standard.

First, good cause exists where, as here, the complaint alleges claims of infringement. See Benham Jewelry Corp. v. Aron Basha Corp., No. 97 CIV 3841, 1997 WL 639037, at *20 (S.D.N.Y. Oct. 14, 1997); Qwest Comm., 213 F.R.D. at 419 ("The good cause standard may be satisfied . . . where the moving party has asserted claims of infringement and unfair competition."); Semitool, 208 F.R.D. at 276. This is not surprising, since such claims necessarily involve irreparable harm to the plaintiff. 4 Melville B. Nimmer & David Nimmer,

Nimmer On Copyright § 14.06[A], at 14-103 (2003); see also Taylor Corp. v. Four Seasons Greetings, LLC, 315 F.3d 1034, 1042 (8th Cir. 2003); Health Ins. Ass'n of Am. v. Novelli, 211 F. Supp. 2d 23, 28 (D.D.C. 2002) ("A copyright holder [is] presumed to suffer irreparable harm as a matter of law when his right to the exclusive use of copyrighted material is invaded.") (quotations and citations omitted); ABKCO Music, Inc. v. Stellar Records, Inc., 96 F.3d 60, 66 (2d Cir. 1996).

Second, good cause exists here because there is very real danger the ISP will not long preserve the information that Plaintiffs seek. As discussed above, ISPs typically retain user activity logs containing the information sought for only a limited period of time before erasing the data. Linares Decl., ¶ 24. If that information is erased, Plaintiffs will have *no* ability to identify Defendants, and thus will be unable to pursue their lawsuit to protect their copyrighted works. Id. Where "physical evidence may be consumed or destroyed with the passage of time, thereby disadvantaging one or more parties to the litigation," good cause for expedited discovery exists. See Qwest Comm., 213 F.R.D. at 419; Pod-Ners, LLC v. Northern Feed & Bean, 204 F.R.D. 675, 676 (D. Colo. 2002) (allowing the plaintiff expedited discovery to inspect "beans" in the defendant's possession because the beans might no longer be available for inspection if discovery proceeded in the normal course).

Third, good cause exists because the narrowly tailored discovery requests do not exceed the minimum information required to advance this lawsuit and will not prejudice Defendants. See Semitool, 208 F.R.D. at 276 ("Good cause may be found where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party."). Plaintiffs seek immediate discovery to identify Defendants; information that may be erased very soon. Plaintiffs (who continue to be harmed by Defendants' copyright

infringement, Linares Decl., ¶ 9), cannot wait until after the Rule 26(f) conference (ordinarily a prerequisite before propounding discovery) because there are no known defendants with whom to confer (and thus, no conference is possible). There is no prejudice to Defendants because Plaintiffs merely seek information to identify Defendants and to serve them, and Plaintiffs agree to use the information disclosed pursuant to their subpoenas only for the purpose of protecting their rights under the copyright laws.

Fourth, courts regularly grant expedited discovery where such discovery will "substantially contribute to moving th[e] case forward." Semitool, 208 F.R.D. at 277. Here, the present lawsuit cannot proceed without the limited, immediate discovery Plaintiffs seek because there is no other information Plaintiffs can obtain about Defendants without discovery from the ISP. As shown by the Declaration of Carlos Linares, Plaintiffs already have developed a substantial case on the merits against each infringer. Plaintiffs' complaint alleges a *prima facie* claim for direct copyright infringement. Plaintiffs have alleged that they own and have registered the copyrights in the works at issue, and that Defendants copied or distributed those copyrighted works without Plaintiffs' authorization. See Complaint. These allegations state a claim of copyright infringement. Nimmer On Copyright § 31.01, at 31-3 to 31-7; Feist Publications, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991). In addition, Plaintiffs have copies of a sample of several of the sound recordings that each Defendant illegally distributed to the public and have evidence of every file that each Defendant illegally distributed to the public. See Complaint Ex. A; Linares Decl., ¶¶ 18-19. These more complete lists often show thousands of files, many of them sound recordings (MP3 files) that are owned by, or exclusively licensed to, Plaintiffs. See Linares Decl., ¶ 19. Plaintiffs believe that virtually all of the sound recordings have been downloaded and/or distributed to the public without permission or consent of the

respective copyright holders. Id. Absent limited, immediate discovery, Plaintiffs will be unable to obtain redress for any of this infringement.

Finally, Plaintiffs request that the Court's Order make clear that Time Warner's response to the subpoena is consistent with its obligations under the Cable Communications Policy Act (the "Cable Act"). See 47 U.S.C. § 551(c). The Cable Act generally prohibits disclosure of personally identifiable subscriber information possessed by cable television companies. The purpose of this provision was to ensure some level of privacy as to the cable television shows subscribers had ordered or were watching. It is not a shield to protect a user's wrongdoing and, indeed, the Cable Act *expressly* provides that information can be disclosed pursuant to court order. While Plaintiffs do not believe the Cable Act was contemplated to apply to cable Internet providers,[4] cable ISPs have expressed concern about their obligations under the Cable Act, and some have taken the position that a court order is required before they will disclose subscriber information. Hence, Plaintiffs seek an appropriate order explicitly authorizing Time Warner to comply with the subpoena.

In general, where federal privacy statutes authorize disclosure pursuant to a court order, courts have held that a plaintiff must make no more than a showing of relevance under the traditional standards of Rule 26. See Laxalt v. McClatchy, 809 F.2d 885, 888 (D.C. Cir 1987) (the court found "no basis for inferring that the statute replaces the usual discovery standards of the FRCP . . . with a different and higher standard"); accord Lynn v. Radford, No. 99-71007, 2001 WL 514360, at *3 (E.D. Mich. Mar. 16, 2001); Gary v. United States, No. 98-6964, 1998 WL 834853, at *4 (E.D. Tenn. Sept. 4, 1998); see also In re Gren, 633 F.2d 825, 828 n.3 (9th

---

[4] Plaintiffs do not concede that this provision applies to Time Warner Cable, but believe that a properly framed court order will make resolution of that issue unnecessary.

Cir. 1980) ("court order" provision of Fair Credit Reporting Act requires only "good faith showing that the consumer records sought are relevant") (internal quotation omitted). Plaintiffs clearly have met that standard here, as the identity of Defendants is essential to Plaintiffs' continued prosecution of this action.

If the Court grants this *Ex Parte* Application, Plaintiffs will serve a subpoena on Time Warner requesting documents that identify the true names and other information about Defendants within 15 business days. Time Warner then will be able to notify its subscribers that this information is being sought, and each Defendant will be able to raise any objections before this Court in the form of a motion to quash prior to the return date of the subpoena. Thus, to the extent that any Defendant wishes to object, he or she will be able to do so.

## IV.   CONCLUSION

For the foregoing reasons, the Court should grant the *Ex Parte* Application and enter an Order substantially in the form of the attached Proposed Order.

Dated: New York, New York
September 28, 2007

By: _____
Brian E. Moran (BM-8573)
Richard J. Guida (RG-5147)
Robinson & Cole LLP
885 Third Avenue, Suite 2800
New York, NY 10022-4834
Telephone: (212) 451-2900
Fax: (212) 451-2999